**ANDRE MATENCIOT, INC., Plaintiff,**

v.

**DAVID & DASH, INC., Defendant.**

**No. 74 Civ. 4956.**

United States District Court,
S. D. New York.

Jan. 27, 1976.

---

14. *See* pp. 1195–1196, *supra.*

Kane, Dalsimer, Kane, Sullivan & Kurucz by David H. T. Kane, New York City, for plaintiff.

Zelby, Burstein, Bernstein & Hartman by Herbert Burstein, New York City, for defendant (after June 23, 1975).

Ruben, Schwartz & Silverberg by Leslie H. Goldenthal, David Sklaire, New York City, for defendant (through June 23, 1975).

## MEMORANDUM OPINION

MOTLEY, District Judge.

Pursuant to Rules 70 and 56 of the Federal Rules of Civil Procedure, plaintiff in this copyright infringement action has moved for a) an order adjudging defendant to be in contempt of the preliminary injunction order issued by this court on November 27, 1974; b) an order adjudging that defendant has failed to comply with this court's order of December 13, 1974, in that defendant failed to purge its contempt of the aforesaid preliminary injunction order; c) an order granting summary judgment on the issue of liability, enjoining further alleged infringements, awarding damages and reasonable attorneys' fees to plaintiff as provided in 17 U.S.C. §§ 101 and 116, and referring the case to a magistrate for an accounting of the alleged damages, and fees; and d) any other and further relief as may be just in the circumstances. Both plaintiff and defendant rely upon all the pleadings, affidavits, exhibits, hearing transcripts and other papers on file in this case.

For the reasons which follow, the court finds defendant in contempt of its order of November 27, 1974 and also finds that defendant failed to purge itself of such contempt as provided in this court's order of December 13, 1974 but denies the motion for summary judgment and associated relief.

### The Contempt Motions

This is an action for copyright infringement arising under 17 U.S.C. §§ 1 *et seq.* and jurisdiction is predicated upon 28 U.S.C. § 1338(a). Plaintiff is a New York corporation with its principal place of business at 240 East 58th Street, New York City. Defendant is a Florida corporation with its principal place of business in Florida, but with a showroom at 201 East 56th Street, New York City.

At issue in this case are two design copyrights. In August of 1971, plaintiff purchased from a British company two designs which it refers to as "Farah" and "Trefle", and which it has sold to the public on wallpaper and fabric since late in 1971. In October of 1974, plaintiff made appropriate application to the Register of Copyrights and received Registration numbers Gp

93963 and Gp 93964 for Farah and Trefle, respectively.

At some point in August or September of 1974, plaintiff discovered that defendant was publishing on wallpaper and fabric two designs, known as Maharani (defendant's number 5034) and Chutney (defendant's number 5033), which exhibit substantial similarities to its own Farah and Trefle.

Defendant's designs, Maharani and Chutney, were published in ten different combinations of color and pattern, as follows:

Def's Catalog No.

| Wallpaper | MAHARANI | |
|---|---|---|
| 516-585 through 516-589 | Five different color combinations | 5 |
| | CHUTNEY | |
| 516-590 through 516-594 | Five different color combinations | 5 |
| Fabric | | |
| | MAHARANI | |
| 5034 | Five different color combinations | 5 |
| | CHUTNEY | |
| 5033 | Five different color combinations | 5 |
| | | 20 |

Thus, there were twenty different combinations of color, pattern and medium (i. e., wallpaper or fabric) bearing the designs at issue.

These twenty different allegedly infringing combinations were published by defendant in a total of seven different ways: catalogs, wallpaper samples, board fabric samples, road line fabric samples, memo fabric samples, rolls of fabric, and rolls of wallpaper. Each catalog contained twelve and one-half pages of the accused designs, and included each of the twenty different combinations.

According to the affidavit of defendant's Executive Vice President, Jay Dash, defendant's catalog was printed by Niagara Sample Book Co. of Niagara Falls, New York.

Defendant claims that a total of 5,199 catalogs was shipped by Niagara Sample Book to the following recipients on the indicated schedule:

| DATE | QUANTITY | DESCRIPTION | SHIPPED TO |
|---|---|---|---|
| 6/17/74 | 18 | Mock-Up Books | David & Dash, Miami |
| 8/23/74 | 1,200 | Finished Catalogs | The Blonder Company, Miami |
| 9/4/74 | 60 | Sample Books- No Name imprint | David & Dash, Miami |
| 10/25/74 | 608 | Finished Catalogs | Fred G. Anderson, Inc. |

| Date | Count | Description | Company |
|---|---|---|---|
| 10/25/74 | 451 | Finished Catalogs | E. C. Rieck Wallcoverings |
| 10/29/74 | 304 | Finished Catalogs | Opal Wallcoverings Corp. |
| 10/29/74 | 305 | Finished Catalogs | Accent Wallcoverings, Inc. |
| 10/30/74 | 751 | Finished Catalogs | Crown Wallpaper Co. |
| 11/5/74 | 1,222 | Finished Catalogs | Wallpride |
| 11/13/74 | 280 | Finished Catalogs | Wallpride |

5,199

On September 6, plaintiff's attorney wrote to defendant's New York showroom, accusing it of copyright infringement through the distribution of the accused designs, and demanding specified remedial action. In reply, Mr. Jay Dash telephoned plaintiff's attorney on September 12, refusing to withdraw the accused designs since defendant claimed equal or superior rights therein. Plaintiff then reiterated its demands by letter of September 17.

Apparently finding no satisfaction, plaintiff filed and served the complaint in this case on November 12, 1974, requesting injunctive and monetary relief, interim impoundment and ultimate destruction of all allegedly infringing materials, costs and attorneys' fees, and any further relief the court might deem proper.

At the instance of plaintiff, a hearing was held on November 15, at which attorneys for both parties were present. The court there issued a temporary restraining order enjoining defendant, its agents, servants, successors, and assigns from infringing plaintiff's specified copyrights, "and from printing, reprinting, publishing, vending or distributing any copies of plaintiff's work, or catalogs displaying that work, that is the subject of said copyrights."

The preliminary injunction hearing began on November 25 and continued on November 26, 1974. Both plaintiff and defendant called witnesses. Defendant called plaintiff's principal, Andre Matenciot, and also called defendant's designer of the accused fabrics.

Upon conclusion of the preliminary injunction hearing, the court determined that defendant's accused designs were at least substantially similar to plaintiff's copyrighted designs and a preliminary injunction issued.

The preliminary injunction continued the temporary restraining order provisions against further infringement and, in addition ordered

"That defendant deliver up to be impounded during the pendency of this action all infringing copies, catalogs displaying copies and other versions of said copyrighted works, including the wallpaper and fabric designs identified as '5034 Maharani' and '5033 Chutney' in defendant's possession or control."

Defendant was directed to file, within ten days of the effective date of the order, an affidavit certifying that it had complied with the impoundment order.

The preliminary injunction order was filed on December 3, 1974. By stipulation, the time for compliance was extended until December 11. On that date, defendant's then attorney wrote to the court seeking

clarification of the impoundment provisions of the order in view of the alleged ambiguity of the order and the expense of assembling all the allegedly infringing material, and requested an immediate conference to that end.

Since plaintiff, on December 12, filed his first motion to punish for contempt of the preliminary injunction order, a hearing was held on December 13. At the conclusion of that hearing, the court found that the defendant had not complied with the terms of the preliminary injunction order, and that the defendant was, accordingly, in contempt of the court. Defendant was ordered to purge itself of its contempt within fourteen days by delivering to the court "all pages [of catalogs] bearing infringing materials" and filing an affidavit of compliance. As to all other materials allegedly infringing plaintiff's copyrights, defendant was directed to file a sworn inventory "affirming that all such other materials are in defendant's warehouse." Any failure of compliance on or after December 28, 1974 was to result in a "penalty fine" of five hundred dollars per day.

In order to place in proper perspective defendant's efforts to comply with these orders, some explanation of defendant's business operation is necessary. Defendant sells catalogs containing its wallpaper and fabric designs to the seven distributors in the United States, which were previously listed. All these distributors are independent selling agents and they, in turn, have wholesale and retail customers throughout the United States. Defendant has no contractual relations with these customers, nor, in fact, does it have any information concerning the identities of these customers or the number of catalogs which they receive from the distributors.

It should also be noted that defendant sold thirty-six rolls of each color of Maharani and Chutney wallpaper to each distribu-

tor in 1974, with the exception of Opal Wallcovering, Inc., which purchased twenty-four rolls.

While the distributors primarily solicit the wallpaper market, defendant supplies its product to the fabric market chiefly through its "showrooms." With the exception of the showroom in New York City, all the showrooms are independently owned and carry and obtain orders for the products of competing manufacturers. Apparently, defendant sent one catalog and various samples of the disputed material to at least eighteen of its showrooms.[1]

Even a brief consideration of the relationship of distributors to defendant will reveal the difficulties facing defendant in complying with the court's contempt order of December 13. Unlike the preliminary injunction, which ordered defendant to deliver up for impoundment all catalogs, etc. "in defendant's possession or control", the contempt order required defendant to deliver up to the court "all [catalog] pages bearing infringing materials," and to certify that "all other materials infringing plaintiff's said copyrights" were gathered in defendant's warehouse. The December 13 order was not limited to those materials "in defendant's possession or control," nor was the phraseology of the latter order a result of mere oversight.

Defendant's then-attorney apparently misunderstood both the number of catalogs outstanding and the difficulty of reclaiming either the catalogs themselves or the allegedly infringing pages therein. Although there was some discussion at the hearing of the fact that some persons currently holding catalogs might not be willing to return them to defendant or to excise the pages at issue, defendant's attorney explicitly undertook the burden of recalling all the pages "from wherever they may be, in whatever jurisdictions they may be" and delivering

---

1. While there is a discrepancy in the affidavits as to whether fabric samples were actually sent to eighteen or twenty-two showrooms, the decision of this motion does not turn on the resolution of this factual issue. It appears that showrooms in Alaska, Oregon, and Puerto Rico received *some* samples of the disputed fabrics, in addition to the eighteen showrooms listed in defendant's December 26, 1974 affidavit of compliance. See May 16, 1975 affidavit of Jay Dash, Exhibit 4; August 1975 affidavit of Jay Dash, p. 2.

them to the court with an affidavit of compliance. (Transcript of December 13, 1974 hearing, pp. 131–138.)

Indeed, the court first became aware of the accurate relationship between defendant and the distributors to whom so many catalogs had been shipped when this information was submitted in the compliance affidavit signed by defendant's Secretary-Treasurer, Leatrice Wilding, on December 26, 1974. That document merely pointed out that defendant "has no dominion or control" over customers of the distributors, apparently with reference to the impoundment provision of the preliminary injunction order set forth above. While pointing out the difficulties of full compliance with the court's order, the affidavit recited that "the defendant does hereby agree and undertakes in good faith, to forward and to deliver to this Court any further and additional pages bearing alleged infringing materials as they may be delivered and received by the defendant from the distributors and the customers of the distributors."

Defendant at no time sought to have the court amend, modify, or vacate any of the orders outstanding against it. Nor did it make any such plea to the Court of Appeals. Defendant's one notice of appeal, filed on December 17, 1974, was directed solely toward the preliminary injunction order signed on November 27, and this appeal was withdrawn by stipulation filed on January 20, 1975. Thus defendant may not now question the propriety of the orders entered against it. *Alemite Mfg. Corporation v. Staff*, 42 F.2d 832 (2d Cir. 1930); *American Optical Company v. Rayex Corporation*, 291 F.Supp. 502, 509 (S.D.N.Y.1967), *aff'd per curiam*, 394 F.2d 155 (2d Cir. 1968); 7 J. Moore, *Federal Practice* ¶ 65.13, at 65–117 (1975).

It is against this background that defendant's efforts to comply with this court's orders must be judged.

In his affidavit dated June 20, 1975, Mr. Jay Dash indicated that, within three days after defendant received notice that a preliminary injunction had been entered against it, he personally telephoned eighteen distributors and seven showrooms, advising them 1) that wallpaper and fabric of the Maharani and Chutney designs were no longer for sale; 2) that defendant would accept for return any of the said material, and would pay for the goods and transportation charges; 3) that all offending catalog pages were to be removed and returned to defendant at its expense; and 4) that a court order was outstanding which required such action. Mr. Philip Dash also made "overlapping" calls to the same effect, according to the affidavit. However, two employees of a Texas showroom later swore that they were never contacted by telephone concerning removal of the material at issue. (July 10, 1975 affidavit of Stephen A. Castlebury; July 9, 1975 affidavit of Celia M. Lambert.) No special written records of these calls were prepared.

No written communication was made to distributors prior to the December 11, 1974 date for compliance with the preliminary injunction order. The following memorandum dated December 11, 1974, was sent to all showrooms, however: "Please be advised that patterns MAHARANI and CHUTNEY are discontinued and will be unavailable. Please remove your board samples." (Plaintiff's Exhibit 12)

Following the court's order of December 13, and on the same date, defendant sent the following telegram to eighteen of its distributors to "[confirm] the message given by telephone" (June 20, 1975 affidavit of Jay Dash):

"PLEASE BE ADVISED THAT DAVID AND DASH WILL NO LONGER BE ABLE TO SUPPLY PATTERNS 'MAHARANI' and 'CHUTNEY' WHICH ARE ENCOMPASSED BY THE FOLLOWING DESIGN NUMBERS PATTERN MAHARANI NUMBER 516585–586–587–588–589 PATTERN CHUTNEY NUMBER 516590–591–592–593–594 PLEASE ADVISE YOUR ACCOUNTS TO REMOVE SAMPLES FROM THEIR CATALOGS IMMEDIATELY AND FORWARD ALL SAMPLES TO DAVID AND DASH. THESE ITEMS HAVE

BEEN TERMINATED AND WILL NO LONGER BE AVAILABLE."

It also sent telegrams and telexes with the following text to each of its seven showrooms in the United States:

"PLEASE BE ADVISED THAT PATTERNS MAHARANI AND CHUTNEY SHOULD BE REMOVED FROM YOUR SHOWROOMS IMMEDIATELY AND ALL SAMPLES SHOULD BE RETURNED TO DAVID AND DASH AT ONCE. THESE ITEMS ARE NO LONGER AVAILABLE AND ORDERS SHOULD NOT BE SOLICITED FOR THEM."

On December 16, employees of defendant's Customer Service Department were instructed in writing to telephone the seven showrooms and eighteen distributors "to reinforce 12/13 telex and mailgrams." Moreover, they were also instructed (apparently orally) to answer any inquiries concerning the Maharani or Chutney designs by reemphasizing the text of the message to distributors, to insist upon return of the catalog pages, and to offer reimbursement for return of the fabrics and wallpaper. (June 20, 1975 affidavit of Jay Dash.)

It should be noted, however, that Maharani and Chutney are not found on a list of "discontinued patterns" in a December 5, 1974 memorandum from defendant to "all showrooms and sales personnel". (Pl's Exh. 14.) At the July 8, 1975 hearing, Jay Dash attributed this discrepancy to the fact that the memorandum was one routinely prepared by its purchasing division. (Tr. 108).

On December 26, 1974, defendant filed with the court its timely affidavit of compliance with the court's order of December 13, 1974, including therein an inventory of all wallpaper and fabric of the accused designs which was located in defendant's warehouse in Florida. Subsequently, on January 10, defendant also directed its employees to call the seven showrooms and eighteen distributors "for double checking that Maharani and Chutney have been pulled and discontinued." (June 20, 1975 affidavit of Jay Dash, Exh. E.)

There is before the court no indication of any further activity by defendant until February 14 when, perhaps spurred by the service on that date of plaintiff's second motion to punish for contempt, defendant again directed its employees by memorandum to call eighteen distributors and its seven U. S. showrooms "for double checking that Maharani and Chutney have been pulled and discontinued." (June 20, 1975 affidavit of Jay Dash, Exh. F.)

On March 25, 1975, plaintiff's contempt motion (along with its motion for summary judgment) was referred to a magistrate for a hearing and report concerning possibilities for settlement of the litigation. Although the efforts at settlement ultimately proved unsuccessful, they were productive of some further activity on defendant's part.

At the instance of the magistrate, defendant sent certified letters to its seven U. S. distributors on April 15 requesting, *inter alia*, the name and address of each customer to whom the distributor had sent catalogs; an account of any action taken by the distributor pursuant to defendant's December 13, 1974 telegram; an account of any responses received as a result of such action; and a description of any orders received for the designs at issue. (April 23, 1975 affidavit of Jay Dash, Exh. E.)

Along with the letter to distributors was another letter to be forwarded to the distributors' customers, requesting that the latter supply defendant with information concerning its efforts to remove and return offending catalog pages. (April 23 affidavit of Jay Dash, Exh. G.) Finally, also at the request of the magistrate, a third letter was sent by certified mail to showrooms on April 15, 1975, requesting removal and return of any offending catalog pages still in their possession, information concerning any inquiries and/or orders for the designs, and an indication whether that letter was the first such request which the showrooms had received. (April 23 affidavit of Jay Dash, Exh. F.)

On April 22, 1975, defendant forwarded a "covering letter" to each of the distributors and showrooms which had received the pre-

vious letters. The text of the brief letter is as follows:

"We were requested to forward the enclosed letter to your attention due to a temporary injunction that has been placed on these two designs, which I have explained previously. Final judgment has not been made on the designs in question.

*We are forwarding this letter only to show that we wish to cooperate with the request made of us.* Please call me collect upon receipt of the letter to further explain and answer any questions that you may have." (emphasis added).

While defendant asserts that the purpose of this letter was "to make certain that there was no confusion about the purpose of the [previously sent] letters" (June 20, 1975 affidavit of Jay Dash, p. 13), plaintiff contends that the intent and effect of the emphasized sentence was to lessen the impact of the previous letters. (Plaintiff's Memorandum in Support of Motion for Contempt, p. 10.) It should also be noted that the initial letter to distributors had requested that the responses be signed under oath, whereas the later letter invited the recipients to forward any questions to defendant by collect telephone call, perhaps decreasing the likelihood of written responses.

For whatever reason, the response to defendant's letters of April 15 was meager. Only one, unverified letter was received from a distributor, who indicated that he would be unable to supply the names and addresses of each recipient of defendant's catalogs. (May 16, 1975 affidavit of Jay Dash, Exhibit 2.) Other distributors orally advised Mr. Dash that they would not furnish confidential account names. (July 8 transcript, pp. 115–116.) Five responses from showrooms were brought to the attention of the court, and four of those indicated that those showrooms had not previously been requested to return catalog pages. (May 16 affidavit of Jay Dash, Exhs. 3A–3E.)

While several thousand catalog pages were returned to defendant—and ultimately to this court—defendant is unable to specify the exact sources for those pages which it received. (June 20, 1975 affidavit of Jay Dash, pp. 13–14.)

Throughout this case to date, plaintiff and defendant have both produced numerous affidavits and memoranda which, supplemented by the nine hearings held so far, have contributed to the development of an extensive, but piecemeal and often contradictory factual record.

However, certain facts seem relatively clear. In the first place, it is undisputed that defendant is not in literal compliance with this court's order of December 13, 1974, wherein defendant was ordered to produce "all pages [of catalogs] bearing infringing material." At best, using defendant's own estimates of the number of pages returned (June 20, 1975 affidavit of Jay Dash, p. 15), there appear to be pages from roughly 1500 catalogs of the approximately 5200 catalogs initially distributed, and the majority of those pages returned only after the issuance of letters at the direction of the magistrate. As indicated previously, defendant pleads that the remaining catalog pages are outside of its legal and practical control.

Moreover, with respect to the second requirement of the December 13 order, defendant's affidavit of compliance failed to state—as it truthfully could not—that *all* other allegedly infringing materials, which would include wallpaper and fabric samples outstanding, were gathered in defendant's warehouse, despite its telephoned offer of reimbursement. Apparently, a large number of rolls initially sold to distributors and *retained* by them, were not returned to defendant.

Not only has defendant failed to comply literally with this court's orders, but, as plaintiff points out, it has failed to take all possible steps to achieve that end. For instance, defendant apparently made no effort to contact directly the customers of its distributors and obtain the offending catalog pages in their possession until it was requested by the magistrate to do so in April of 1975. If it had at least made such

an effort in December of 1974, when the catalogs were apparently newly distributed to such customers, it might have been more successful than it proved to be four months later.

Moreover, prior to the December 11 date for compliance with the preliminary injunction, defendant made no attempt to communicate in writing with either its distributors or its showrooms to stress the urgency of compliance with the court's order of November 27. It was only on December 11 that defendant prepared the perfunctory memorandum to its showrooms, as cited *supra.*

Defendant's failures of compliance were largely failures of perseverance. It apparently failed, for instance, to request at any time that its two showrooms in Alaska and Oregon return the small quantities of fabric samples in their possession. It failed to reiterate its April requests to its distributors that they attempt to recall the offending pages from their customers, or to detail their efforts in that regard. It failed, in December, to ascertain exactly what quantities of samples and catalogs were in the hands of its distributors and showrooms. At these and other points in the compliance process, it failed to be as comprehensive, explicit, and vigorous in carrying out this court's orders as, in retrospect, it apparently could have been.

However, it should also be noted that defendant's failures of compliance have been exclusively in the process of *retrieving* from the public eye those materials already in circulation at the time of this court's orders. Plaintiff has failed to meet its burden of establishing that defendant affirma-

tively produced or distributed any of the allegedly infringing materials after the issuance of this court's temporary restraining order on November 15, 1974.[2]

■ A party seeking to punish his adversary for civil contempt must establish by clear and convincing evidence that the alleged contemnor is in violation of the court's decree. "A bare preponderance of the evidence will not suffice." *Hart Schaffner & Marx v. Alexander's Department Stores, Inc.*, 341 F.2d 101, 102 (2d Cir. 1965) (*per curiam*); *Stringfellow v. Haines*, 309 F.2d 910, 912 (2d Cir. 1962). With this standard in mind, the court examines the two decrees at issue on this motion.

Plaintiff has moved, first, for an order adjudging defendant to be in contempt of the preliminary injunction issued on November 27, 1974. On the basis of the evidence before it at the hearing on December 13, 1974, this court found the defendant in contempt of the preliminary injunction. That finding was predicated, not upon continuing acts of infringement by defendant, but rather upon its failure to comply with the impoundment provisions of the order and to submit an affidavit of compliance therewith.

■ Defendant's efforts at compliance have been previously summarized. Although the impoundment provisions of the November 27 order were less demanding than those of the December 13 order—in that the former required impoundment of only those materials "in defendant's possession or control"—counsel for defendant conceded at the time that full compliance was not accomplished by even the adjourned deadline,[3] but rather stressed that such non-

---

2. Although there is evidence that certain of defendant's catalogs were *received* by distributors after issuance of the restraining order, the evidence shows that the catalogs were *shipped* from defendant's printer prior to November 15. The fact that they were shipped after plaintiff gave defendant notice of the alleged infringement is, of course, of no legal significance in deciding the instant motion. Moreover, this is a motion to punish defendant for failure to comply with the court's orders of November 27

and December 13, not the order of November 15.

3. See December 13, 1974 affidavit of David Sklaire, wherein he assured the court that defendant had complied with "all of the *other* relevant provisions of the preliminary injunction order." (page 3, emphasis supplied). Mr. Sklaire argued that, in view of ongoing settlement negotiations, "it was expressly agreed by the counsel for both parties hereto, that the effectiveness of the [impoundment provision] *would be deferred until December 11, 1974.*"

compliance as existed was "innocent." (December 13, 1974 affidavit of David Sklaire, p. 5). The answer to this contention is that "a violation need not be wilful for a party to be found in civil contempt." *N.L.R.B. v. Local 282, International Brotherhood of Teamsters, etc.,* 428 F.2d 994, 1001 (2d Cir. 1970).

■ It is true that the full extent of defendant's efforts at compliance—as set forth above—was not brought to the attention of the court at the December 13 hearing, which was concerned primarily with the status of catalogs still outstanding. However, in view of defendant's conceded failure to fully comply with the impoundment provision, its failure to contact in *writing* all persons holding catalogs and other materials at the earliest possible opportunity after issuance of the injunction, and its failure to immediately use the communications agressiveness which was later to bear some fruit in April, the court finds that there is clear and convincing evidence of defendant's failure to comply with this court's order of November 27. Accordingly, the court finds no reason to disturb its previous finding that defendant was in contempt of that order.

■ Plaintiff has also moved for an order adjudging that defendant failed to comply with the court's order of December 13, 1974 to purge itself of contempt. The court grants this motion. The December 13 order, which defendant never sought to modify, amend, vacate, or appeal, required that defendant deliver up "all pages" bearing infringing materials from outstanding catalogs. While defendant later pointed out the difficulties of compliance, it clearly failed to take all steps within its power to remove such catalogs from the market. The success—however limited—which attended the April letters required by the magistrate merely indicates that defendant relied too heavily on its assumptions that such efforts would be futile. Defendant failed to pursue the allegedly infringing pages with all the vigor and dispatch possible. For instance, with the exception of the two previously cited sets of telephone calls to distributors and showrooms, defendant apparently made no efforts to recall either the catalogs or other material from December 1974 until mid-April of the following year. And, as previously pointed out, defendant ultimately retrieved only 1500 of 5200 catalogs outstanding. For its lack of literal compliance and also for its lack of vigor in attempting to comply, the court holds that defendant has failed to comply with the order of December 13.

Having determined that plaintiff has established defendant's failure of compliance by clear and convincing evidence, the court must determine what relief is appropriate in these circumstances. The court's order of December 13 provided that "commencing December 28, 1974, defendant . . . pay to plaintiff . . . a penalty fine of five hundred dollars ($500.00) per day for each day defendant has not complied with the terms of the Order."

■ Although styled a "penalty fine," this sum was levied by the court to coerce the defendant to comply with the court's order,[4] rather than to punish it for disobedience. The fine was contingent, coercive, and remedial—"compelling obedience to an order of the court for the purpose of enforcing the other party's rights, or obtaining

---

(page 2). The only stipulation of which the court is aware was one extending the deadline for *compliance* with the order until that date. And, of course, the fact that settlement negotiations were underway does not excuse noncompliance with this court's orders.

Mr. Sklaire also argued—by letter and in his affidavit—that the impoundment provision of the order was ambiguous and required clarification. Any such infirmity of the order should have been immediately brought to the court's attention upon its issuance, rather than at a time subsequent to the court's deadline for compliance. Contrary to the assertion contained in Mr. Sklaire's affidavit (at page 4), defendant was not seeking "prompt judicial guidance."

4. Plaintiff impliedly concedes that this is a coercive fine in his Proposed Conclusion of Law number 8: "The Court imposed fine of $500 per day is warranted as a judicial sanction to coerce defendant into compliance with the Court Orders. . . ."

other relief for the opposing party." *International Business Machines Corp. v. United States*, 493 F.2d 112, 115 (2d Cir. 1973), *cert. den.* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). The styling of the motion, the fact that the fine was made payable to plaintiff, and the wording of the order itself make clear that this contempt was civil rather than criminal, that the fine was remedial rather than punitive. *See Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

■ As the Supreme Court said in the landmark case of *United States v. United Mine Workers of America*, 330 U.S. 258, 303–4, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."

The obvious difficulty with continuing to regard the purpose of this fine as coercive is that defendant is unable to comply with the December 13 order in each and every respect. Defendant has demonstrated to the satisfaction of this court that it has no control over either the distributors or their customers such as would enable it to deliver up for impoundment the offending pages from all 5200 catalogs. On the other hand, both the court and the parties can only speculate whether many more catalog pages might have been returned if defendant had more energetically, insistently, and promptly appealed for the cooperation of the distributors in notifying their customers.

■ It thus appears that the imposition of a five hundred dollar per day fine—now totalling over $150,000—probably could not achieve its objective of securing the return of all suspect pages. Moreover, since compliance with the December 13 order is now incomplete and will probably remain so, there is no logical point at which to terminate accrual of this penalty. Under these circumstances, imposition of a penalty in an arbitrary amount would be purely punitive, and would be in the nature of punishment for criminal contempt, to vindicate the authority of this court. Such action would be clearly improper here, on a motion which has been treated from the outset as one for civil contempt.[5]

■ As the Supreme Court pointed out in the *United Mine Workers* case, where the purpose of judicial sanctions is to make the defendant comply, the court must consider "the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." 330 U.S. at 304, 67 S.Ct. at 701. The fine embodied in the order must fall when considered in the light of the latter standard. While the amount may have initially appeared reasonably calculated to induce compliance, it is apparent to the court now that imposition of this fine at this time cannot result in impoundment of all allegedly infringing catalog pages.

■ Moreover, it appears that imposition of the fine, as originally imposed, might well result in a levy far in excess of plaintiff's provable damages on the merits. This would be an impermissible result here. "Where a fine is imposed in [a civil contempt] proceeding, it must not exceed the actual loss to the complainant caused by respondent's violation of the decree in the main cause plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt of the judgment." *Parker v. United States*, 153 F.2d 66, 71 (1st Cir. 1946), *citing Christensen Engineering Co. v. Westinghouse Air Brake Co.*, 135 F. 774, 782 (2d Cir. 1905). *Accord, United Mine Workers, supra*, 330 U.S. at 304, 67 S.Ct. 677; *Clark v. Boynton, et al.*, 362 F.2d 992, 998 (5th Cir. 1966).[6] Accordingly,

---

5. By way of illustration, the provisions of Rule 42(b) of the Fed.R.Crim.P. have not been followed in this case.

6. *United States v. ITT Continental Baking Company* 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975), cited by plaintiff as authority for the propriety of a heavy daily fine where the contempt is of a "continuing failure or neglect to obey," is readily distinguishable. That case merely involved construction of a statutory provision, 15 U.S.C. § 45(*l*), which explicitly

plaintiff's recovery will be limited to those provable damages proximately resulting from defendant's failure to obey the orders of November 27 and December 13, along with its expenses in prosecuting the contempt motions.

■ Expenses recoverable from the alleged contemnor include, in a proper case, the complainant's reasonable counsel fees. *W. E. Bassett Company v. Revlon, Inc.,* 435 F.2d 656, 665 at n.5 (2d Cir. 1970); *Fleischmann Distilling Corp., et al. v. Maier Brewing Co., et al.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). *Fleischmann* speaks of the propriety of awarding counsel fees in the case of *willful* disobedience of a court order. 386 U.S. at 718, 87 S.Ct. 1404. What constitutes such "willful" disobedience is, of course, a troublesome question. *See* Dobbs, *Contempt of Court: A Survey,* 56 Cornell L. Rev. 183, 262 (1971); Moskowitz, *Contempt of Injunctions, Civil and Criminal,* 43 Colum.L.Rev. 780, 794 (1943).

If it were clear that defendant had no capacity whatsoever to comply with the December 13 decree in recovering *all* offending pages from distributors and their customers, then its failure to do so could not, in the court's view, be termed willful. However, the response to the April letters shows that defendant was able, in some measure, to achieve a return of the pages.

If defendant had made every possible effort to solicit the cooperation of the distributors in recovering the offending pages from their customers, the good faith effort would also bar a finding of willfulness. However, defendant instead chose merely to point out the difficulties of compliance in its affidavit filed on December 26. It made no effort to have the order modified or vacated. After sending the telegrams on December 13, it apparently made no further written efforts to retrieve the offending materials from the distributors' customers until it was requested by the magistrate to

send letters four months later. And its telephone calls of January 10 and February 14 to the distributors were merely "for double checking that Maharani and Chutney have been pulled and discontinued." At no point between December 13 and mid-April were the distributors specifically and persuasively asked for their cooperation in retrieving the catalog pages from their customers. This effort was half-hearted at best.

In the view of the court, this course of conduct indicates a willful disregard of the December 13 order such as to justify plaintiff's recovery from defendant of those reasonable counsel fees which it incurred in prosecuting the contempt motion for failure to comply with that order. The court also finds that defendant's failure to comply with the impoundment provision of the November 27 order was a willful violation of that order, and that defendant's eleventh hour request for "clarification" (described *supra* ) was merely an attempt to avoid the consequences of its failure of compliance. Thus plaintiff may also recover its counsel fees for prosecution of the motion for contempt of that order.

Accordingly, plaintiff is entitled to recover from defendant those provable damages which it suffered due to defendant's failure to obey the orders of November 27, 1974 and December 13, 1974. Plaintiff is also entitled to recover those reasonable expenses and counsel fees which it incurred in prosecuting its two motions to hold defendant in contempt.

Since the record is presently devoid of adequate evidence as to these damages, no award will be entered at this time. Proof of damage due to defendant's failure of compliance may be adduced at the trial on the merits. Plaintiff will be required by separate order to submit to the court a sworn, detailed account of expenses and

---

provided for a substantial fine in instances of "continuing failure or neglect to obey" a final order of the Federal Trade Commission. The question before the court was one of statutory

construction, and the court did not have occasion to discuss the propriety of such a fine in the context of a non-statutory, civil contempt proceeding.

counsel fees incurred in prosecuting the contempt motions.

### The Motion for Summary Judgment

 As mentioned previously, plaintiff has also moved for summary judgment on the issue of liability in this case. This motion is denied on the ground that there is a genuine issue as to whether defendant did actually copy plaintiff's copyrighted designs.

In accordance with General Rule 9(g) of this Court, plaintiff submitted the following statement of the material facts as to which, it contends, there is no genuine issue to be tried:

"1. Andre Matenciot Co., Inc. is the owner of United States Copyright Registration No. Gp 93963 for the design titled 'Farah' (Complaint Ex. A; In Evidence at Preliminary Injunction Hearing as PX 10).

"2. Andre Matenciot Co., Inc. is the owner of United States Copyright Registration No. Gp 93964 for the design titled 'Trefle' (Complaint Ex. B; In Evidence at Preliminary Injunction Hearing as PX 11).

"3. Plaintiff's copyright evidenced by Certificate of Registration No. Gp 93963 is a valid and subsisting copyright on the design offered for sale by plaintiff under the name 'Farah'.

"4. Plaintiff's copyright evidenced by Certificate of Registration No. Gp 93964 is a valid and subsisting copyright on the design offered for sale by plaintiff under the name 'Trefle'.

"5. The defendant, David & Dash, Inc., has offered for sale, published and sold a design it calls 'Maharani' on fabric and wallpaper.

"6. The defendant, David & Dash, Inc., has offered for sale, published and sold a design it calls 'Chutney' on fabric and wallpaper.

"7. A study of the defendant's design 'Maharani' shows substantial similarity to and copying of plaintiff's copyrighted design 'Farah'.

"8. A study of the defendant's design 'Chutney' shows substantial similarity to and copying of plaintiff's copyrighted design 'Trefle'."

Defendant, in its 9(g) statement, asserted that "[it] created its own designs without resort to plaintiff's allegedly copyrighted designs," despite this court's finding at the preliminary injunction hearing that "[i]t is plain to any lay observer, even one who is not average, I would say, that a substantial similarity exists [between plaintiff's and defendant's designs]." (November 26, 1974 transcript, p. 123.)

It is true that "the test of copyright infringement is whether the similarity between the products would lead 'the average lay observer . . . [to] recognize the alleged copy as having been appropriated from the copyrighted work.'" *Herbert Rosenthal Jewel Corp. v. Honora J. Co., Inc.*, 509 F.2d 64, 65 (2d Cir. 1974) (citations omitted). However, ". . . that similarity must have been caused by the defendant's having copied the copyright holder's creation. The protection is thus against copying—not against any possible infringement caused when an independently created work coincidentally duplicates copyrighted material." *Roth Greeting Cards v. United Card Company*, 429 F.2d 1106, 1110 (9th Cir. 1970), *citing Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936). *Accord*, 2 *Nimmer on Copyright* § 141.2 (1975).

The question whether defendant actually copied plaintiff's designs, then, is clearly a factual one of the utmost materiality. And the similarities between the designs bear upon this question insofar as they are circumstantial evidence of such copying. *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946). Thus, the remaining inquiry must be whether there is a "genuine issue" as to this fact, based upon the material to be properly considered by the court.

In its 9(g) statement, plaintiff clearly contends that such copying is an established fact. Were there no further evidentiary support in the record for defendant's perfunctory assertion of independent creation

in its own 9(g) statement (which, in turn, merely paraphrases the fourth affirmative defense in its Answer to the Complaint), then there would be a serious question whether there exists a proper basis on which this court could find a "genuine issue" as to the fact of copying. *See* Rule 56(e), Fed.R.Civ.P.

However, contrary to the assertions of plaintiff (Reply Brief in Support of Motion for Contempt and Summary Judgment, p. 6), the testimony of defendant's designer, William R. Whaley, at the November 26, 1974 preliminary injunction hearing clearly raised a genuine issue as to whether defendant independently created its designs, or whether it piratically copied them from plaintiff's copyrighted designs. Mr. Whaley testified at some length concerning his creation of these designs and the sources which he employed. Defendant's attorney also indicated that he wished to produce corroborating witnesses, who were not then heard, due to the limited purpose of the hearing. (Tr. p. 122). The court's conclusion, at the end of that hearing, that plaintiff had made a sufficient evidentiary showing to warrant the granting of interim relief, *pendente lite,* by no means constituted a finding that there existed no genuine issue as to whether defendant had copied plaintiff's designs.

In view of the fact that this sworn testimony is available in the record, there is no reason why it need be set forth again in affidavit form supporting the motion.

Plaintiff has cited no case which would support its contention that summary judgment is appropriate in precisely these circumstances. In *Miller Studio, Inc. v. Pacific Import Co.,* 39 F.R.D. 62 (S.D.N.Y.1962), defendant produced *no* admissible evidence to substantiate its claim that the allegedly infringing products were copied from sources other than plaintiff's copyrighted materials. In *Fisher-Price Toys v. My-Toy Co., Inc.,* 385 F.Supp. 218, 184 U.S.P.Q. 376, 379 (S.D.N.Y.1974), the court, after a trial on the merits, found incredible the testimony of defendant's employees concerning their independent efforts in creating de-

fendant's products. In the instant case, however, the court has made no such finding, and is not prepared to do so without a full hearing on the merits.

Moreover, in *Champion Map Corp. v. Twin Printing Co.,* 350 F.Supp. 1332 (E.D.N.C.1971), summary judgment was granted because defendant failed to offer *any* evidence in rebuttal to plaintiff's *prima facie* case of infringement. That is not the case here.

Since the court has determined that defendant has raised a genuine issue as to whether it copied plaintiff's designs, the court need not consider the other alleged factual issues asserted by defendant. The motion for summary judgment and attendant relief is accordingly denied.