**DURACELL, INC., Plaintiff,**

v.

**GLOBAL IMPORTS, INC., Defendant.**

**No. 83 Civ. 4053 (SWK).**

United States District Court,
S.D. New York.

May 6, 1987.

Kotite, Kaplan, Bodian & Eames, New York City by David T. Eames, for plaintiff.

Ross & Hardies, New York City by Joseph Kaplan, Keith P. Schoeneberger, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action arose under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the law of the State of New York. Plaintiff Duracell Inc. ("Duracell") sought to enjoin the infringement of its trademarks, the illegal importation of goods bearing its trademarks, and unfair competition and for damages resulting therefrom. Jurisdiction was conferred on this Court by the provisions of 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. §§ 1121 and 1125, and under the principles of pendent jurisdiction.

On July 8, 1983, a consent judgment was entered against defendant Global Imports, Inc. ("Global"). The consent judgment provides that

3. Defendant has infringed plaintiff's trademark by selling in the United States batteries bearing the trademark DURACELL which are manufactured abroad by Duracell Inc. and are not intended for distribution within the United States.

4. Defendant, its agents, servants, employees, and all persons in active concert with it are hereby enjoined from importing, buying, selling, or otherwise disposing of batteries manufactured abroad by plaintiff Duracell Inc.

The action is presently before the Court on Duracell's motion, brought on by order to show cause, for an order holding Global in civil contempt of Court for Global's failure to obey the provisions of the consent judgment. Global has cross-moved, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, for an order vacating the consent judgment. For the reasons set forth below, Duracell's motion is granted and Global's motion is denied without prejudice to renewal upon a showing of changed circumstances.

## FACTS

Duracell alleges that on or about May 3, 1985, Duracell obtained a copy of a flyer which had been sent by Global to an Illinois-based firm. The flyer offers for sale DURACELL batteries which have been manufactured by N.V. Duracell Batteries S.A. ("N.V. Duracell"), a foreign subsidiary of Duracell in Belgium, for distribution in certain countries including Germany and the United Kingdom. Duracell claims that Global is therefore selling foreign DURACELL batteries which it is enjoined from selling and that the sale of such batteries directly contravenes the terms of the consent judgment entered by this Court. As a result, Duracell requests that the Court hold Global in civil contempt.

Global does not contest that is was selling batteries manufactured by N.V. Duracell. Global, however, argues that it has not violated the consent judgment, which was drafted by Duracell, in that the consent judgment enjoins Global from "importing, buying, selling, or otherwise disposing of batteries manufactured abroad by plaintiff Duracell Inc." and the batteries which Global offered for sale were manufactured by N.V. Duracell, and not by Duracell Inc. Alternatively, Global argues that the law permits Global to import and sell in the United States genuine DURACELL batteries which are foreign-made without infringing Duracell's trademark. As a result, Global moves to vacate the consent judgment on the grounds that (1) based on United States Customs Service regulations and recent case law, it is now lawful to import DURACELL batteries manufactured abroad, and (2) as a result, the consent judgment unreasonably restrains Global from importing such batteries when other companies are now able to do so.

## DISCUSSION

### A. Motion for Contempt of Court

■ It is well settled that a party seeking to punish his adversary for civil contempt bears the burden of establishing by clear and convincing evidence that the alleged contemnor is in violation of the Court's decree. *E.g., Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 646 F.2d 800, 808 (2d Cir.1981); *Hart Schaffner & Marx v. Alexander's Department Stores, Inc.,* 341 F.2d 101, 102 (2d Cir.1965); *Andre Matenciot v. Dash & Dash, Inc.,* 422 F.Supp. 1199, 1209 (S.D.N.Y.1976). In construing the terms of a consent judgment, "reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent [judgment], any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). *Accord New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27, 37 (2d Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979). Nonetheless, where the terms of an order are unclear or ambiguous, a person cannot be held in contempt. *Perfect Fit,* 646 F.2d at 808.

Duracell has provided a flyer distributed by Global which is dated May 1985, approximately two years after entry of the consent judgment in this case, and which offers for sale a "HOT SPECIAL—IMPORTED DURACELL BATTERIES CARDED—ENGLISH AND FOREIGN LANGUAGE PACKAGING." The flyer also provides that the batteries offered are "Genuine Duracell Batteries Distributed Independently of Duracell USA."

Global does not contest that it distributed this flyer, and, indeed, did sell such batteries. Rather, Global argues that the consent judgment is clear on its face and prohibits only the sale of foreign batteries manufactured by Duracell Inc, and not those manufactured by N.V. Duracell Batteries S.A. Alternatively, Global argues that, should the Court determine that the meaning of "Duracell Inc." must be determined based on the underlying intent of the parties, then Duracell's own statements that it is an entirely separate legal entity from its foreign subsidiaries are dispositive and the consent judgment must be read as not prohibiting the sale of foreign DURACELL batteries manufactured by N.V. Duracell Batteries S.A. Finally, Global argues that it should not be held in contempt because the consent judgment now contravenes public policy.

■ The Court finds Global's arguments unavailing. The circumstances surrounding the formation of the consent judgment, including the complaint, the exhibits to the complaint, and Global's actions and understanding of the consent judgment, as set forth in the affidavit of Norman Levy, Global's President and Chief Executive Officer, all demonstrate the parties' understanding of the injunction as prohibiting the importation and sale of DURACELL batteries made by Duracell through foreign subsidiaries. The complaint provides:

Duracell is a corporation organized under the law of the State of Delaware, with its principal place of business at Bershire Industrial Park, Bethel, Connecticut. Duracell is principally engaged in the manufacture and sale of batteries. Duracell maintains seven manufacturing facilities in the United States, employing approximately 4,000 people. Duracell, through foreign subsidiaries, also manufactures batteries in Belgium and other countries and distributes those batteries worldwide.

\* \* \* \* \* \*

In 1963, an indirect foreign subsidiary of Duracell [N.V. Duracell Batteries S.A.] began manufacturing batteries ("foreign DURACELL batteries") primarily for distribution in European countries, including the United Kingdom and other member countries of the European Economic Community.

Complaint ¶¶ 3, 14. The complaint also included as exhibits pictures of foreign DURACELL batteries, which are packaged differently than domestic DURACELL batteries. The batteries Global was selling, as pictured in an attachment to the Levy affidavit, are the same as the foreign DURACELL batteries pictured in the exhibits to the complaint. Moreover, Global adhered to the terms of the consent judgment for nearly two years before it began to sell foreign DURACELL batteries. Global should have sought prompt judicial guidance before unilaterally abandoning a procedure to which it had adhered for nearly two years. *See Andre Matenciot*, 422 F.Supp. at 1208–09 n. 3.

■ Finally, Global's argument that it should not be held in contempt because the consent judgment now contravenes public policy is without merit. Violations of an injunction, even if the injunction is not valid, are punishable as contempt. *See, e.g., Emery Air Freight Corp. v. Local Union 295*, 356 F.Supp. 974, 975 (E.D.N.Y.1972) ("It is well settled that although temporary restraining orders were improperly entered, they must be obeyed until overturned, and failure to do so is punishable by contempt."); *Backo v. Local 281, Unit-*

*ed Brotherhood of Carpenters and Joiners of America*, 308 F.Supp. 172, 176 (N.D. N.Y.1969) ("[T]he validity of an order issued by a court of competent jurisdiction is not open to collateral attack in a contempt proceeding based on disobedience of that order. If defendants thought the temporary order erroneous, their remedy was not to disobey it, but to seek direct review. Those who disobey a court order do so at their peril, whether or not the order is valid ...").

■ As a result, it is clear that Global knew it was selling the batteries Duracell brought this action to exclude and which this Court has enjoined Global from selling. Global's assumption that the order was invalid because it now contravenes public policy is not a valid excuse to the operation of the consent judgment. Accordingly, Duracell's request for an order holding Global in civil contempt for violation of this Court's consent judgment entered on July 8, 1983, by its renewed practice since that date of selling imported DURACELL batteries in the United States is granted.

As a result of Global's contempt, Duracell seeks either (1) $100,000 in damages as compensation for economic loss and the loss of goodwill, and to coerce Global into complying with this Court's injunction, or (2) that Global be required to account to Duracell for treble the profits earned due to its civil contempt. Duracell also requests that the Court order destruction of the imported DURACELL batteries within Global's possession. Finally, Duracell requests reasonable attorneys' fees and costs. The issues of what judicial sanctions to apply in this case will be referred to a Magistrate of this Court for determination.

**B. *Global's Motion to Vacate the Consent Judgment***

■ "[A] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). This is so regardless of whether the injunction has been entered

with the consent of the parties or following litigation. *Id.* As a result, there is no doubt that this Court is empowered to modify the consent judgment upon a proper showing of changed conditions to justify the modification. *United States v. American Society of Composers, Authors and Publishers,* 586 F.Supp. 727, 728 (S.D.N.Y. 1984). Rule 60(b)(5) of the Federal Rules of Civil Procedure expressly authorizes a district court to relieve a party from a final judgment when "it is no longer equitable that the judgment should have prospective application." Indeed, the Second Circuit views the power of a court of equity to modify a decree of injunctive relief to be "long-established, broad, and flexible." *New York State Association for Retarded Children v. Carey,* 706 F.2d 956, 967 (2d Cir.), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983).[1]

Changes in fact or in law afford the clearest bases for altering an injunction. *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 418 F.2d 31, 35 (2d Cir.1969). For example, in *System Federation No. 91 v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), the Supreme Court held that a consent decree prohibiting certain acts must be modified when a statutory requirement on which the decree was based was amended so as to permit them. The Second Circuit has made it clear that there is "no reason for a different view" when the requirement is constitutional and a subsequent decision of the Court has demonstrated that the court entertaining the decree interpreted the requirement otherwise. *Carey,* 706 F.2d at 971 (citing *Theriault v. Smith,* 523 F.2d 601 (1st Cir.1975).

Global argues that, as a result of the U.S. President's disapproval[2] of a determination by the United States International Trade Commission (the "ITC") in *In re Certain Alkaline Batteries,* 6 I.T.R.D. (BNA) 1849 (Ct. Int'l Trade 1984) (excluding from entry into the United States imports of foreign DURACELL batteries which were found to infringe Duracell's United States trademark and to misappropriate the trade dress for DURACELL batteries), it is now lawful to import DURACELL batteries manufactured abroad. Global also argues that recent case law demonstrates that the importation of goods manufactured abroad by a common enterprise does not infringe the United States trademark of a United States entity which is part of such a common enterprise. As a result, Global contends that it is bound by a consent judgment which restrains only it from doing what any other company may now do, import and sell foreign DURACELL batteries.

Duracell, on the other hand, argues that presidential disapproval, which may only be based on policy reasons, neither affects nor nullifies the ITC's findings of trademark infringement in the importation of foreign DURACELL batteries. Duracell also argues that recent case law does not support Global's position.

■ Duracell's position has merit. Because the President may disapprove an ITC determination only "for policy reasons," and not because of the underlying merits of the ITC investigation, the validity of the ITC's determination is unaffected by presidential disapproval. *Young Engineers v. United States International Trade Commission,* 721 F.2d 1305, 1313 (Fed.Cir. 1983). "After disapproval, the determination of violation, which by § 1337(b) mandates exclusion of goods, becomes ineffec-

---

**1.** More restrictive language in the *Swift* decision, which subsequently had been relied on by some lower courts, was later explained by the Supreme Court:

*Swift* teaches that a decree may be changed upon an appropriate showing, and it holds that it may *not* be changed in the interest of the defendants if the purposes of the litigation as incorporated in the decree (the elimination of monopoly and restrictive practices) have not been fully achieved.

*United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968). "The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Swift,* 286 U.S. at 114, 52 S.Ct. at 462.

**2.** Determination of the President Regarding Certain Alkaline Batteries, 50 Fed.Reg. 1665 (1985).

tual. That determination, however, does not thereby become void." *Id.*

■ The presidential disapproval did not operate to alter the *status quo* here. When the consent judgment was entered, it was binding only as to Global, and it remains binding only as to Global. Should Duracell choose to file suit against other importers of foreign DURACELL batteries, it remains free to do so.

Recent case law also supports Duracell's position. The issue turns on the reconciliation of two statutory provisions, Section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526, and Section 42 of the Lanham Trade-Mark Act of 1946, 15 U.S.C. § 1124, which prohibit the importation of goods bearing trademarks identical to that of a United States company owning an American trademark, with the United States Customs Service regulations, 19 C.F.R. § 133.-21(c)(1)–(3) (1985), which permit the importation of such goods, *inter alia*, if the American and foreign trademarks are owned by the same or affiliated entities or if the American trademark owner has authorized the foreign entity to use the trademark.

In *Coalition to Preserve the Integrity of American Trademarks v. United States* ("COPIAT"), 790 F.2d 903 (D.C.Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 642, 93 L.Ed.2d 699 (1986), the D.C. Circuit held that the Customs Service regulations were contrary to and violated Section 526 and remanded the matter to the district court with instructions to issue a declaratory judgment to that effect. The *COPIAT* court recognized that there has been considerable disagreement on this issue among the courts that have considered it and that its holding was in conflict with views expressed by district courts within this Circuit in *Osawa & Co. v. B & H Photo,* 589 F.Supp. 1163 (S.D.N.Y.1984), and *Bell & Howell: Mamiya & Co. v. Masel Supply Co.,* 548 F.Supp. 1063 (E.D.N.Y.1982), *vacated on other grounds,* 719 F.2d 42 (2d Cir.1983).

The Second Circuit, in *Olympus Corporation v. United States,* 792 F.2d 315 (2d Cir.1986), *petition for cert. filed,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d —— 55 U.S.L.W. 3372 (U.S. Nov. 25, 1986) (No. 86–757), upheld the validity of the Customs Service regulations without, however, limiting the application of Section 526. The *Olympus* court concluded, with one dissent, that

> While there may be a difference between exercising administrative discretion on a case-by-case basis to refuse to undertake enforcement actions and promulgating a regulation that ensures potential gray market infringers that they may import goods with impunity, the latter is not the case here. Customs' interpretation of the statute does not limit the reach of protection of section 526; it only limits Customs' obligation to enforce the section by excluding goods. The markholder still has rights under the statute: he may pursue private remedies against the importer under section 526(c), notwithstanding Customs' failure to exclude the goods.

*Olympus,* 792 F.2d at 320 (citation omitted). Thus, under the view adopted by the Second Circuit, Duracell retains the right to pursue its private remedies even though the Customs Service regulations validly relieve the United States Customs Service from an obligation to enforce section 526 in a situation like Duracell's.

Clearly, neither the *COPIAT* decision nor the *Olympus* decision constitutes a change in the law occurring after the consent judgment was entered in this case which would provide a basis for altering the injunction. Accordingly, Global's motion to vacate the consent judgment is denied at this time. The Court notes, however, that the Supreme Court has accepted *certiorari* in the *COPIAT* case and that a petition for *certiorari* has been filed in the *Olympus* case. Global remains free to renew its motion should a change in the law occur which would warrant modifying or vacating the consent judgment.

SO ORDERED.