**UNITED STATES of America,**

v.

**Michael VULPIS, Defendant.**

**No. SSS 89 Crim. 446 (CBM).**

United States District Court,
S.D. New York.

Nov. 18, 1991.

## OPINION RE CRIMINAL CONTEMPT

MOTLEY, District Judge.

Based on the evidence presented on August 16 and 17, 1991, this court holds Michael Vulpis in criminal contempt for knowingly and wilfully disobeying orders of this court.

### Factual Background

This criminal contempt proceeding stems from a related case before this court entitled *United States v. Paccione,* 89 Crim. 446 (CBM). Although Michael Vulpis is not a defendant in that case, his involvement with the defendants in that case has a lengthy history and merits some attention.

Vulpis was one of the original owners of Rosedale Carting Corp. ("Rosedale"), a New York City commercial and industrial waste collection company founded by himself and his brother, Daniel Vulpis, in 1954. In 1977, he became the sole shareholder of Rosedale when the company bought out his brother.

By 1987, he had transferred ownership and control of Rosedale to his sons Anthony Vulpis and Dominick Vulpis. However, on November 4, 1988 he resumed control when he was appointed receiver of Rosedale after a dispute arose between Anthony and Dominick.

On June 14, 1989, a twelve count indictment was unsealed in *United States v. Paccione,* 89 Crim. 446 (CBM), naming Rosedale and Anthony Vulpis, among others, defendants in a criminal prosecution concerning a massive illegal dumping operation. Count One of the indictment charged each defendant with violation of section 1962(c) of the Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1962(c), by conducting and participating in the affairs of an enterprise, which was comprised of all defendants, through a pattern of racketeering. The racketeering acts alleged included mail and wire fraud, illegal disposal of medical wastes, and fraudulent statements to city officials to secure disposal permits. Count Two of the indictment charged each defendant with conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d). Counts Three through Twelve charged instances of mail fraud, in violation of 18 U.S.C. § 1341.[1]

On September 21, 1989, the court signed an *Ex Parte* Amended Post-indictment Restraining Order pursuant to 18 U.S.C. § 1963(d)(1)(A) (the "Restraining Order"). GX 2, at 2.[2] This order forbade the defendants "and other persons acting for or in concert with the above-named defendants having actual knowledge of this Order" from taking any actions prohibited by the order. GX 2, at 2. One such prohibition stated that no defendant corporation could

> transfer, sell, assign, pledge, hypothecate, encumber, dissipate or move in any manner, or cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, dissipated or moved in any manner, any property or other interest owned or held by one or more of said companies....

GX 2, at 6. The sole exception noted was for expenditures made in the ordinary course of business. GX 2, at 6, 9–10.

After a three month jury trial, verdicts were announced on June 8, 1990. Anthony Vulpis and Rosedale (and six other defendants) were convicted of both the substantive RICO offense and conspiracy to violate RICO, as well as five mail fraud offenses.

On the same day the verdicts were announced, the court approved a Forfeiture Consent Order which settled the forfeiture issue in the case. *See* GX 1. The Forfeiture Consent Order, which had been agreed upon by the parties on June 6, 1990, directed certain defendants to forfeit $22 million to the United States Government within 90 days of their RICO convictions. GX 1, at 1. It also explicitly stated that the Restraining Order would remain in effect until the

---

1. An eighteen count superseding indictment was handed down on March 8, 1990.

2. "GX" refers to the Government's Exhibits introduced at the August 16 and 17, 1991 civil contempt proceeding.

Government was paid. GX 1, at 3. Michael Vulpis signed the Forfeiture Consent Order on behalf of Rosedale.

The defendants did not pay the $22 million to the Government within the agreed upon ninety day period, nor have they since paid anything. Therefore, they remain jointly and severally liable for the full $22 million amount. See GX 1, at 2.

By an order dated June 19, 1990, Barrington D. Parker, Jr. was appointed Trustee for the Government's interests in Rosedale and several other defendant corporations, pursuant to the Forfeiture Consent Order. See GX 3. The June 19, 1990 Order was amended, nunc pro tunc, by an order dated November 10, 1990, which further defined the Trustee's powers and duties. See GX 3A.

On March 15, 1991, at the request of the Trustee, Louis D'Angelo was appointed chief executive officer of the defendants corporations, which included Rosedale. See GX 6.

On April 12, 1991, Vulpis resigned as receiver of Rosedale as part of a Settlement Agreement between D'Angelo, Parker and Vulpis concerning a dispute about the ownership of certain property belonging to Rosedale. See GX 5. As a condition to certain payments which he would receive under the agreement, Vulpis agreed to fully cooperate with the Trustee and Government in the preservation of Rosedale's assets and in the disposition of such assets in order to satisfy the $22 million fine. GX 5, at 4. Specifically, Vulpis agreed "to assist the U.S. in the preservation of the assets of Rosedale" and "to take no steps to impair the assets of Rosedale or to interfere with the business operations of Rosedale." GX 5, at 5. Vulpis remained a consultant to Rosedale. (Tr. 76–77).[3]

After the Settlement Agreement was signed, however, D'Angelo felt that Vulpis continued to interfere with Rosedale's operation. (Tr. 78). D'Angelo consulted the Trustee and they decided to remove Vulpis. (Tr. 78). After receiving a letter on July 1, 1991 advising him of his removal, Vulpis became very distraught and threatened D'Angelo: "You haven't seen the last of me." (Tr. 79).

D'Angelo testified that he noticed on or about August 5, 1991 that two Rosedale trucks had not picked up garbage from customers on routes 103 and 114. (Tr. 80). It should be noted that while actively associated with Rosedale, Vulpis "had access to all of Rosedale's records, including its most valuable asset, its customer lists." (Tr. 271; see tr. 74).

On August 9, 1991, the Government applied for an Ex Parte Cease and Desist Order pursuant to 18 U.S.C. § 1963(e) to have Michael Vulpis held in contempt, alleging that Vulpis had violated court orders. There was no designation made in that order as to the type of contempt sanction sought.

On August 16 and 17, 1991, this court held a contempt hearing where the Government presented evidence that Vulpis attempted to divert Rosedale accounts from two customer routes by directing former employees of Rosedale to lie to customers about Rosedale's status as a going concern, to deny customers any choice in selecting a new carting company and to remove Rosedale decals from businesses without the permission of the owners. (See tr. 272–77).

During the hearing, the court learned upon inquiry that the Government was seeking only civil contempt relief. Thereafter, the court directed the Assistant United States Attorney in the case to bring a criminal contempt case against Michael Vulpis as well. That direction was made in open court in the presence of Vulpis and his attorney.

At the conclusion of the hearing, the court held Vulpis in civil contempt of its orders. (Tr. 279).

Pursuant to this court's direction, a criminal contempt hearing was scheduled for September 11, 1991. On that date, the parties appeared before this court and agreed that the evidence adduced at the civil contempt proceeding on August 16 and

3. "Tr." refers to the transcript of the August 16 and 17, 1991 civil contempt proceeding.

17, 1991 would constitute the entire record for the criminal contempt matter.

*Analysis*

1. Notice was adequate.

■ Michael Vulpis was properly notified of the Government's criminal contempt application. Rule 42(b) of the Federal Rules of Criminal Procedure sets out the notice requirement in a criminal contempt action:

> A criminal contempt ... shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States Attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

On August 16, 1991, during the civil contempt hearing, Michael Vulpis was given notice of the criminal contempt proceeding which would be brought against him on September 11, 1991. The notice was given in open court, in the presence of Michael Vulpis and his attorney, by the court as it directed the Government to bring the action. The essential facts of the criminal contempt charged were the same as those described in the Order to Show Cause signed by the court on August 9, 1991 and in the papers submitted by the Government in support of that order. The facts supporting a criminal contempt citation were also established at the civil contempt hearing on August 16 and 17, 1991. This notice satisfied the notice requirement under Rule 42(b).

2. Each element of criminal contempt is satisfied.

The court's power to hold a defendant in criminal contempt arises under 18 U.S.C. § 401, which states:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> .     .     .     .     .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

■ This court can impose sanctions for criminal contempt if it finds beyond a reasonable doubt that Michael Vulpis "wilfully violated the specific and definite terms of a court order." *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 659 (2d Cir.1989), *cert. denied*, 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990) (citations omitted). This standard has been satisfied in this case.

First, the requirements of the court's orders are specific and definite. The Restraining Order prohibits anyone acting for or in concert with Rosedale from taking any action which would dissipate any property or other interest owned by Rosedale. GX 2, at 2. This order clearly applied to Vulpis when it was signed since Vulpis was Rosedale's receiver at that time. The Forfeiture Consent Order which followed not only explicitly incorporated the Restraining Order, but expanded upon it. *See* GX 1. For instance, the Forfeiture Consent Order provided for the appointment of a Trustee to "oversee the operation of the respective companies" in order to prevent the dissipation of or interference with the assets of the defendant corporations until the $22 million was paid. GX 1, at 2.

Second, Vulpis had actual knowledge of the terms of the orders. As stated above, when the Restraining Order went into effect on September 21, 1989, it clearly applied to Vulpis as Rosedale's receiver. Thus, he certainly would have become aware of the terms of the Restraining Order immediately. Whether he actually did, however, is of no consequence since his signing of the Forfeiture Consent Order on June 8, 1990 put him on notice of both orders. Indeed, at the time he signed the Forfeiture Consent Order, he told the court that he had reviewed and discussed the Forfeiture Consent Order with independent counsel, that he fully understood its terms and that he signed it knowingly and volun-

tarily. (*See* tr. 265–67). Since the Forfeiture Consent Order incorporated the Restraining Order, as of June 8, 1990 he was on notice of the terms of both orders and, therefore, the applicability of each to him.

That situation did not change on April 12, 1991 when he resigned as receiver. As stated above, in signing the Settlement Agreement Vulpis agreed to fully cooperate with the Trustee and Government in the disposition of Rosedale's assets in order to satisfy the $22 million fine by assisting the Government in the preservation of Rosedale's assets and by taking no steps to impair Rosedale's assets nor interfere with Rosedale's business operations. GX 5, at 4–5. These obligations thus continued the effect of the orders as to Vulpis.

Third, Vulpis wilfully disobeyed the court's orders. As stated above, evidence was adduced at the civil contempt hearing on August 16 and 17, 1991 that Michael Vulpis, along with his longtime friend Anthony Piccolo and his brother Daniel Vulpis, attempted to divert Rosedale accounts from two customer routes by directing former employees of Rosedale to lie to customers about Rosedale's status as a going concern, to deny customers any choice in selecting a new carting company and to remove Rosedale decals from business establishments without the permission of the owners. At the end of that hearing, the court discussed at length its specific findings regarding this evidence. (*See* tr. 272–77).

After discussing the evidence, the court issued its ruling at the civil contempt hearing. The ruling included a finding that Vulpis's contempt was wilful.

This Court finds that Michael Vulpis is in contempt of this court's order of August 9th, 1991, and is in contempt of its prior orders of September 21st, 1989, and this court's order of June 8th, [1990], which is the original consent agreement regarding forfeiture between the Government, Michael Vulpis, and others who are defendants in the underlying criminal action.

Michael Vulpis is in wilful contempt of those orders, the Court finds, as a result of the evidence adduced in this hearing and as set forth above. The evidence shows by both direct evidence and circumstantial evidence that Michael Vulpis has interfered with the operation of Rosedale and is responsible for the diversion of funds from Rosedale due it for garbage collections on its Routes 103 and 114. He is also responsible for the diversion of property belonging to Rosedale in the form of containers to Dynamic Carting and DV Carting.

(Tr. 279).

The Court heard no new evidence from the parties at the September 11, 1991 proceeding. In his letter dated September 20, 1991, counsel for the defendant asked the court to reexamine the evidence and find that Vulpis' contempt was not wilful. The court sees no reason to alter its determination. Vulpis' conduct clearly amounted to a knowing and wilful violation of this court's orders.

*Conclusion*

Because this court has found that Michael Vulpis knowingly and wilfully violated the Restraining Order and the Forfeiture Consent Order, he is held in criminal contempt. He is ordered to appear for sentencing on November 20, 1991 at 10:00 a.m. in Courtroom 2703 of the U.S. Courthouse at Foley Square.