Stephen KING, Plaintiff,

v.

ALLIED VISION, LTD.,
et al., Defendants.

No. 92 Civ. 3852 (CBM).

United States District Court,
S.D. New York.

April 3, 1996.

Cowan, Liebowitz & Latman, P.C., Paul R. Levenson, Moses & Singer, Peter A. Herbert, New York City, for plaintiff.

Leventhal Slade & Krantz, Melvyn R. Leventhal, New York City, for defendants.

*OPINION*

MOTLEY, District Judge.

Plaintiff's motion for attorney's fees for defendant's contempt of court for numerous violations of a Final Consent Decree between the parties is before the court after the remand from the Second Circuit Court of Appeals.

The Court of Appeals reviewed two prior orders of this court issued in 1994 and 1995 (the "1994 Order" and the "1995 Order", respectively) in which this court found defendant New Line Cinema in contempt. The Court of Appeals affirmed certain portions of the 1994 Order but vacated other portions thereof, determining that these latter portions exceeded the scope of the original agreement between the parties. In turn, the Court of Appeals vacated the entire 1995 Order because it was founded on defendant's failure to comply with those portions of the 1994 Order that the Court of Appeals considered improper.

In its 1994 and 1995 Orders, this court had also awarded plaintiff attorney's fees for the costs it had incurred in prosecuting defendant for contempt. The Court of Appeals remanded the matter back to this court for reconsideration of the issue of attorney's fees in light of the vacatur of portions of the 1994 Order and the entirety of the 1995 Order. Upon remand, there are certain essential elements of the law of contempt that the court will need to address. First, a party cannot be held in contempt unless it has violated a clear, unambiguous and legal order of the court. Second, an award of attorneys fees for civil contempt can only be based on a finding that such contempt was willful. In order to determine the instant request for attorney's fees, this court must review its earlier award in light of the Court of Appeals' decision as it relates to these essential elements of the law of contempt. Specifically, the Court of Appeals noted that defendant's actions "may have been careless" but expressed "reluctan[ce] to conclude that the noncompliance was willful." 65 F.3d 1051, 1063 (2d Cir.1995).

Accordingly, upon remand from the Court of Appeals, this court has thoroughly re-

viewed all of the evidence and arguments before it on this matter, both those proffered by plaintiff on the renewed request for attorney's fees as well as those introduced through the hearings originally held before it. As more fully set forth below, this court concludes that defendant's conduct was not carried out with the intent necessary to warrant the imposition of attorney's fees for the underlying contempt.

## BACKGROUND

Although the facts of the underlying case are set forth in the various judicial opinions issued with regard to the matter,[1] and familiarity therewith is assumed, this opinion details those matters relevant to the instant motion.

This action was commenced by plaintiff Stephen King (hereinafter "plaintiff") in 1992. Plaintiff sought injunctive and monetary relief against defendant Allied Vision and its subsidiaries New Line Cinema and Innovation Books for the alleged misattribution to plaintiff of the motion picture entitled "The Lawnmower Man" (hereinafter "the film") through use of both "possessory" and "based upon" credits in violation of, *inter alia*, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In July of 1993, this court conducted a three day evidentiary hearing on plaintiff's request. Subsequently, a preliminary injunction order was issued prohibiting numerous defendants from utilizing King's name in connection with the film. Upon review of this order, the Second Circuit affirmed the preliminary injunction to the extent that it prohibited the use of the possessory credit but reversed that portion of the

injunction regarding defendants' use of a based upon credit, although both issues were to be considered at trial. *King v. Innovation Books,* 976 F.2d 824 (2d Cir.1992). In May of 1993, before commencement of the trial, the parties entered into a Settlement Agreement, with Final Consent Decree, which settled the underlying action. On May 17, 1993, the Settlement Agreement and Final Consent Decree were approved by this court.

The provisions of the Final Consent Decree (hereinafter "the Decree") set forth numerous obligations for defendants. Paragraph 1(a) of the Decree prohibited, *inter alia,* defendants from using King's name worldwide in connection with the film. Paragraph 2 required the immediate distribution of a copy of the Decree by defendant New Line to all entities participating in the distribution or other commercial exploitation of the film. The parties also agreed that the Decree would be accompanied by a Letter of Instruction, the text of which was set forth in an exhibit to the Decree, that explained the Decree in simple terms and demanded the recipients' compliance therewith.[2] Paragraph 4 of the Decree required that defendants supply all entities that had received distribution of video copies of the film with "paste-over" stickers to conceal King's name from all existing and future inventory of such videos, or alternatively, new sleeves making no reference to plaintiff.[3] Similar to the obligations of ¶ 2, these corrective products were to be accompanied by a detailed letter demanding that the recipients of these products take corrective steps using the enclosed materials and informing them of the terms of

---

**1.** *See King v. Allied Vision, Ltd.,* 807 F.Supp. 300 (S.D.N.Y.1992) (order granting preliminary injunction), *aff'd in part and rev'd in part,* 976 F.2d 824 (2d Cir.1992); 155 F.R.D. 440 (S.D.N.Y. 1994) (1994 Order); 877 F.Supp. 185 (S.D.N.Y. 1995) (1995 Order); 65 F.3d 1051 (2d Cir.1995) (reviewing 1994 and 1995 Orders).

**2.** Paragraph 2 of the Final Consent Decree provided in relevant part as follows:

Each of the Defendants shall take immediate steps to provide by certified mail return receipt requested ... a copy of this Final Consent Decree to all its respective licensees, distributors, successors and assigns embraced by the terms hereof, and all other persons or entities

to which each of the Defendants has granted, or grants in the future, the right to engage in any of the commercial activities or forms of exploitation described in paragraph 1(a) hereof, accompanied by a letter of instruction in the form annexed hereto as Exhibit 1 ... which explains the terms of the Final Consent Decree, and demands assurance that they will, in all respects, abide thereby.

(Decree at ¶ 2.)

**3.** As will become important later, King's name appeared on several sides of the sleeves, including the front.

the Decree.[4] Paragraph 6 of the Decree required defendants to supply plaintiff's counsel with affidavits "describing with particularity the efforts undertaken by each of them to effectuate compliance" with the requirements of the Decree. (Decree at ¶ 6.)

Soon after execution of the Decree, King returned to the court alleging that defendant New Line was not complying with the terms of the Decree and seeking a civil contempt order against defendant. Citing numerous instances of defendant's failure to comply with the Decree, in an Order with Memorandum Opinion dated March 25, 1994 (the "1994 Order"), this court found defendant in contempt and assessed damages and attorney's fees against defendant. First, it was determined that defendant did not provide its licensees and distributors with a copy of the Decree and the required letter until June 14, 1993—more than three weeks following the execution of the Decree—and that this delay was in violation of defendant's obligations under ¶ 2 of the Decree, which required defendant to take "immediate steps" to carry out this task. Second, that defendant violated ¶ 4 of the Decree in several ways: 1) it failed to distribute proper corrective stickers for tapes in the existing inventories of wholesalers and retailers in a mailing which took place in early July 1993 (the "first mailing") and failed to take any corrective steps with regard to the flawed stickers until, at the earliest, August 13, 1993 (the "second mailing"), although it knew of the problem more than a month before;[5] 2) the first and second mailings were both carried out by third class rather than certified mail, as required by the Decree; 3) without assessing the amount of corrective material each retailer might need, defendant sent an arbitrary number of both stickers (eight) to each retailer in the first mailing and new sleeves (ten) to each retailer in the second mailing; and, 4) defendant failed to send the required demand letter to accompany the corrective materials.[6] Third, this court found that the affidavits defendants submitted to plaintiff pursuant to ¶ 6 of the Decree that were supposed to detail defendant's compliance efforts were actually false and misleading.[7]

Defendant was ordered to "take any action necessary to cure the contempt at all wholesale and retail outlets within thirty days of this opinion." 155 F.R.D. at 452. Defendant was required to "contact all entities to which it has distributed videocassettes and the previous mailings to determine their current inventory of the Lawnmower Man and whether the entities have received adequate corrective stickers to comply with the Decree" and "correct any deficiencies within this thirty day period." Plaintiff was awarded compensatory damages for defendant's noncompliance as well as attorney's fees for prosecuting the contempt.

---

4. The Decree provided as follows:

   Each of the Defendants shall supply all of its wholesalers or others to which it has made distribution of videocassettes or other formats of the Motion Picture with package "paste-overs", or alternatively, new packages on which the name of Stephen King is not displayed, and demand in a letter, sent by certified mail, ... which shall accompany the "paste-overs" and/or new packages being provided to said wholesalers or others that such entities affix the new "paste-over" covers onto the old packages, or, alternatively, replace the old packages with the new packages, and further issue instructions to such entities to cease and desist from all advertising or promotion relating to the Motion Picture ... which is not in strict conformity with the mandates of the Final Consent Decree.
   (Decree at ¶ 4.)

5. The first mailing contained a paste-over sticker that failed to conceal plaintiff's name on the front of the video sleeve. (R. at 140–47.)

In addition, defendant had argued that it was only obliged to send the corrective materials and letter to either its wholesalers *or* retailers. Given defendant's choice to effectuate a mailing to both wholesalers and retailers, defendant was found to have taken upon itself the obligations to carry out a proper mailing to both groups. 155 F.R.D. at 451.

6. Instead of the required demand letter, the first mailing included a promotional letter that simply asked for cooperation with regard to the corrective material but failed to mention the decree; the letter accompanying the second mailing only included a photocopy of the form letter that was annexed to the Decree. 155 F.R.D. at 445.

7. Defendant's employees testified that they signed the affidavits prepared by counsel detailing defendant's purported efforts to comply with the Decree without knowing the truth of the contents of the affidavits. 155 F.R.D. at 446–447.

To comply with the 1994 Order and determine the number of nonconformed copies in the distribution stream, defendant retained a mass mailing service to effectuate the distribution of an inventory report form to 25,334 video retailers and 226 video wholesalers and distributors (the "third mailing"), which would be filled out and returned to defendant. 877 F.Supp. at 187. After return of the completed form, defendant planned to have the service distribute the appropriate number of corrective sleeves or stickers to each responding entity (the "fourth mailing"). *Id.* Regretfully, a minority of the retailers, wholesalers and distributors responded. *Id.* at 188. Defendant sent the fourth mailing only to the responding entities, ignoring the fact that a vast majority of the retailers, wholesalers and distributors had not responded and thus would not receive an amount of corrective packaging corresponding to their inventory. *Id.* Under the 1994 Order, plaintiff was permitted to conduct a compliance investigation, which revealed that a majority of the videocassette packages in the distribution stream observed still bore the banned references to plaintiff. *Id.* at 189.

Accordingly, plaintiff moved again for contempt before this court and defendant was found in violation of both the Decree and the 1994 Order. The court ordered defendant to use certified mail to contact those entities that had not responded to the third mailing to determine if they had sufficient corrective packaging. If correspondence by certified mail did not elicit a response, defendant was directed to contact them by phone. *Id.* at 191.

Defendant appealed both the 1994 and 1995 Orders. Upon review, the Court of Appeals affirmed substantial portions of the 1994 Order but determined that certain elements of the 1994 Order were overreaching in that they imposed obligations on defendant that exceeded the terms of the original agreement between the parties and thus could not serve as the basis for the sanction of contempt. 65 F.3d at 1060–61. Because the 1995 Order was based on defendant's failure to comply with those portions of the 1994 Order the Court of Appeals considered overbroad, the 1995 Order was vacated in its entirety.[8] The Court of Appeals remanded the proceedings to this court.

On December 5, 1995, while the parties were trying to resolve any outstanding disputes between them, the court held a conference with counsel for the parties and directed each to submit proposed findings of fact and conclusions of law on the issue of attorney's fees alone. (Order, dated December 5, 1995, at 1–2.)

On January 29, 1996, except for plaintiff's request for attorney's fees, the parties settled all other elements of the underlying contempt proceedings. (*See* Consent Order, dated January 29, 1996.)

## ANALYSIS

"The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 796, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740 (1987).

Generally, contempt sanctions can be criminal or civil in nature and each of these forms have their own purposes and their own specific characteristics. Distinguishing between these two types of contempt is found through an "examination of the character of the relief itself." *Hicks v. Feiock,* 485 U.S. 624, 636, 108 S.Ct. 1423, 1432, 99 L.Ed.2d 721 (1988).

8. The Court of Appeals specifically found as follows:

> [W]e affirm the 1994 Order insofar as the district court found New Line (1) in contempt of ¶¶ 2 and 6, and (2) in contempt of ¶ 4 to the extent that New Line failed to use certified mail in its mailings and, in connection with the first mailing, sent defective stickers and an inadequate demand letter. We vacate that portion of the 1994 Order in which the district

court ordered New Line to contact all of its retailers to determine their inventory of the film. Furthermore, we vacate the 1995 Order in its entirety, as that finding of contempt was based on New Line's failure to comply with the aforementioned portion of the 1994 Order. Accordingly, we affirm in part, and vacate in part and remand for proceedings consistent with this decision.
65 F.3d at 1063.

■ Criminal contempt sanctions are punitive in nature imposed to "vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). To support a finding of criminal contempt, it must be shown beyond a reasonable doubt that the contemnor willfully violated "'specific and definite terms of a court order.'" *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir.1992) (citation omitted).

■ A punishment for civil contempt "coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947) (citation omitted); *see also, United Mine Workers v. Bagwell*, ── U.S. ──, ──, 114 S.Ct. 2552, 2558, 129 L.Ed.2d 642 (1994). Civil contempt proceedings are subject to a higher standard of proof than the "preponderance of the evidence" standard applicable to ordinary civil cases, *Hart Schaffner & Marx v. Alexander's Department Stores, Inc.*, 341 F.2d 101, 102 (2d Cir.1965), and the complaining party must show proof of noncompliance by clear and convincing evidence. *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). A court may find a party in civil contempt only if the complainant proves: 1) the existence of a clear and unambiguous order[9]; 2) that the contemnor has not complied with the order; and, 3) that the contemnor has not been "'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Drywall Tapers, Local 1974 v. Local 530*, 889 F.2d 389, 394 (2d Cir.1989) (quoting *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981)), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990); *see also, United States v. Local 1804–1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir.1995). The complaining party need not show that the contemnor's actions were will-ful for there to be a finding of civil contempt, however. *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd*, 869 F.2d 34, 39 (2d Cir.1989).

■ Although the purpose of civil contempt is to compensate a party for the contemnor's actions, the Second Circuit has determined that the contempt had to have been willful in order for the victorious party to receive attorney's fees for the cost of prosecuting the contempt. *Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.*, 885 F.2d 1, 8 (2d Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1477, 108 L.Ed.2d 614 (1990); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979); *cf. Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986) (holding willfulness not a requirement for an award attorney's fees but rather an element to be considered when determining their propriety). As with the elements of civil contempt generally, the complaining party must show by clear and convincing evidence that the contemnor's actions were willful for there to be an award of attorney's fees for prosecuting the contempt. *Pearlman v. Bouchard*, 92 Civ. 1803, 1992 WL 125542, \*3 (S.D.N.Y. May 28, 1992).

Twenty years ago, this court noted the "troublesome" nature of determining what constitutes willful disobedience of a court order. *Andre Matenciot, Inc. v. David & Dash, Inc.*, 422 F.Supp. 1199, 1211 (S.D.N.Y. 1976). In *Andre Matenciot*, the contemnor was found guilty of willfully violating a court order because it had the capacity to comply with the order, had not acted in good faith to comply therewith, and had not moved to vacate or modify the order prior to the alleged contumacious acts. 422 F.Supp. at 1211. Other courts have proffered the same or similar definitions of willfulness. *See, e.g., Sizzler Family Steak Houses*, 793 F.2d at 1535 (finding "[W]illfulness generally connotes intentional action taken with at least callous indifference for the consequences.")

---

9. A "clear and unambiguous order" is defined as "one that leaves 'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" *King v. Allied Vision, Ltd.*, 65 F.3d at 1058 (citations omitted).

(citation omitted); *EEOC v. Local 638 ... Local 28 Sheet Metal Workers' Int'l Assoc'n,* 889 F.Supp. 642, 670–671 (S.D.N.Y.1995) (holding "[c]ontempt is willful where the contemnor had actual notice of the court's order, [citing *Vuitton et Fils S.A., supra,* 592 F.2d at 131], was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply [citing *Andre Matenciot, supra* ].")*; cf. Upjohn Co. v. Medtron Laboratories, Inc.,* 894 F.Supp. 126, 135 (S.D.N.Y.1995) (without setting forth standard for willfulness, holding that actions were willful where contemnor in civil contempt proceeding "willfully ... sought to evade the Court's authority through an illusive trail of feigned ignorance, faulty record-keeping, questionable documentation and hidden [transactions]").

With this "troublesome" standard in mind, the court must consider plaintiff's renewed request for attorney's fees.

## I. PLAINTIFF'S RENEWED REQUEST FOR ATTORNEY'S FEES.

### A. The Remand of the Court of Appeals.

As stated above, the Court of Appeals found that upon review of this court's prior orders of contempt in this case defendant's actions did not appear willful, which would warrant the denial of the request for attorney's fees. Specifically, the court found as follows:

> Although New Line may have been careless in attempting to comply with certain portions of the Decree and the 1994 Order, we are reluctant to conclude that the noncompliance was willful.

65 F.3d a ¹063.

The court cited defendant's "substantial efforts to comply with both the Decree and 1994 Order by conducting four separate mailings in which it distributed hundreds of thousands of corrective stickers and sleeves" as evidence that its actions were not willful and considered defendant's "noncompliance in light of the ambiguous portions of the Decree, including the uncertainty as to which

entities were to receive corrective materials." *Id.*

Accordingly, the following discussion is informed by these observations.

### B. Plaintiff's Allegations Concerning Willfulness.

On the renewed request for attorney's fees, plaintiff cites six specific instances of contemptuous conduct that, it is argued, reveal the willful nature of defendant's actions. (*See* Pl.Prop.Find. of Fact and Conc. of Law, at 2–7.) Specifically, plaintiff states defendant's willful conduct is exhibited by the following examples from the record: 1) that defendant made a "deliberate decision" to permit orders of the film received before the date of the Decree that were filled after that date using packaging that did not comply with the dictates of the Decree, (*Id.* at 2); 2) that the first mailing was not designed to cover the reference to plaintiff on the front of the package, (*Id.*); 3) that the first mailing was not sent out until after two months after the Decree was entered, (*Id.*); 4) that the second mailing, which would correct the omission of the first mailing, was sent out a month after defendant learned of the error, (*Id.* at 3); 5) that defendant "consciously and deliberately" sent the first and second mailings by regular as opposed to certified mail, (*Id.*); and, 6) that defendant submitted "admittedly misleading affidavits of compliance" in violation of ¶ 6 of the Decree, (*Id.*).[10] The court shall consider these each in turn.

1. Defendant's "deliberate decision" to permit orders received for the film before the date of the Decree to be filled with packaging bearing reference to plaintiff even after the date of the Decree.

■ From the facts on the record it appears that all orders for the film received from the date the Decree was executed were filled using new packaging that contained no references to plaintiff, (*See, e.g.,* R. at 323–

---

**10.** Appropriately, plaintiff's do not cite, and the court would not consider, a request for attorney's fees for those actions that violated the overbroad portions of the 1994 Order or the 1995 Order.

325.),[11] and plaintiff does not contest this. Any orders that had been placed prior to mid-May 1993, however, were filled using the old, offending packaging, even those orders received before entry of the Decree but filled after that date. (R. at 368). One of defendant's employees, Peter Fifield, Vice President of New Line Home Video, Inc., testified that: 1) he believed that under the Decree those orders that were outstanding at the time of the Decree could be filled with the old packaging; and, 2) that he knew that defendant had plans to remedy the use of plaintiff's name in packages that were in the hands of wholesalers and retailers. (R. at 368–370.) In other words, this witness appears to have believed that any offending packaging in defendant's inventories could be distributed because remedial steps would soon be taken to correct the errors in all materials in the distribution stream. Nothing in the record indicates by clear and convincing evidence that these statements were false or that defendant's actions were carried out with the requisite intent necessary to warrant an award of attorney's fees on this point.

2) Defendant's first mailing was defective because it did not cover the reference to plaintiff on the front of the package.

■ As described in the 1994 Order, defendant stated that the incomplete corrective packaging was distributed because a codefendant, Allied Vision, Ltd., had informed it that use of the corrective sticker on only the back of the package was sufficient to comply with the Decree. 155 F.R.D. at 447; (R. at 78). Employees of defendant stated that they had failed to notice that the corrective stickers would not cover the front of the video sleeve. 155 F.R.D. at 447; (R. at 103–104, 375–379, 443–447). Additionally, Philip Jarboe, Supervisor of Production and Distribution for defendant, testified that prior to the entry of the Decree he was aware that defendant eventually would have to remove all references to plaintiff from the film packaging. In late June 1994, after the entry of the Decree, however, Jarboe testified that he ordered corrective stickers only for the back of the packaging in accordance with orders from his superiors (i.e., the same individuals who had testified that they had failed to notice that the stickers would not cover the front of the packaging). (R. at 140–147.) Jarboe stated that he knew that the stickers would not cover the front of the package but, since he was told to order certain stickers and had not been furnished a copy of the Decree nor did he know its specific contents, he assumed that such stickers would comply with the Decree. (R. at 146–146.) The court views defendant's tale of error and miscommunication cynically, but, once again, plaintiff fails to show by clear and convincing evidence that these statements were false or that defendant's employees' actions were carried out willfully. *Cf. Sizzler Family Steak Houses,* 793 F.2d at 1535 (recognizing that even where results of negligent policing of franchises predictably resulted in violations of underlying court order there was still no evidence of willfulness by contemnor.) [12]

3) The first mailing was not sent out until two months after the entry of the Decree.

■ Defendant's failed to distribute even defective corrective materials pursuant to ¶ 4 of the Decree in the first mailing until July 7–9, 1993. (R. at 116–17, 124–28, 174.) Plaintiff failed to provide any evidence that this delay was willful. The two month delay in taking even token steps to comply with the order with regard to corrective packaging was not " 'reasonably diligent and energetic,' " *Drywall Tapers,* 889 F.2d at 394, and thus warranted a finding of contempt. The court is not convinced, however, and the evidence adduced at the lengthy hearing held by the court in 1993 did not establish, that this delay was willful even if clearly negligent and contumacious. That these acts were

11. All references to the record refer to the hearings held before the court in October and November of 1993.

12. As noted above, in *Sizzler,* the Court of Appeals for the Eleventh Circuit determined that a finding of willfulness was not a prerequisite to an award of attorney's fees in an action for contempt and founded such an award on defendant's demonstration of "no small degree of indifference." 793 F.2d at 1535–1536.

contemptuous is clear and this court's finding on this issue was affirmed by the Second Circuit. Plaintiff has not shown by the requisite clear and convincing evidence, however, that this delay was willful. *Cf. Sweater Bee,* 885 F.2d at 5 (confirming special master's and district court's finding that acts carried out by contemnor in violation of consent decree were not willful even though they were substantial, numerous and carried out over a two year period). The court does recognize, however, that there may be circumstances in which delay in carrying out a court order can warrant a finding that the contempt in question was willful. *See, e.g., Twentieth Century Fox Film Corp. v. 316 W. 49th St. Pub Corp.,* 90 Civ. 6083, 1990 WL 165680, at *5 (S.D.N.Y. October 23, 1990) (holding 18 day delay in complying with order warranted finding of willfulness because minimal steps were required by defendant to bring it into compliance with the order and defendant had clear notice that its acts were illegal given that it had engaged in similar illegal activity in the past), *modified on different grounds,* 1991 WL 16547 (S.D.N.Y. February 8, 1991).

4) That the corrective second mailing was sent out a month after defendant learned of the error in the first mailing.

■ Similarly, in early July 1993, defendant learned of the defect in the corrective packaging contained in the first mailing. It was not until August 13–15, 1993, however, that new corrective sleeves were distributed. 155 F.R.D. at 448. Defendant's outside general counsel testified that this delay was caused by defendant's desire to determine the best way to correct the problem and effectuate compliance with the Decree. (R. at 452–55.) Once again, the submissions before the court and the testimony elicited on this issue fail to identify any clear and convincing evidence that this delay was carried out in bad faith.

5) Defendant's use of regular as opposed to certified mail.

■ Paragraph 4 of the Decree provided that the required mailings were to be made by certified mail, which defendant failed to do, choosing instead to send both the first and second mailings by regular mail. (R. at 241–42.) Although admitting during the hearing that certified mailing was probably possible, defendant's outside general counsel at first stated that certified mail was not used because he believed the Post Office "would not accept" it, that it was "virtually impossible" and "too expensive." 155 F.R.D. at 445 (citations omitted).

The failure to carry out the mailing by certified mail obviously had its difficulties. An individual charged with carrying out the mailing believed, it appears, that certified mailing of 25,000 packages was impossible and alleged that defendant did what was believed was functionally possible. Given defendant's attempts to carry out the spirit of the 1994 Order, its actions were less than meticulous and warranted a finding of contempt. The court is not willing to conclude on the facts before it, however, that these actions were carried out with the level of intent necessary to justify a finding of willfulness and impose an additional sanction of attorney's fees.

6) Defendant's submission of misleading affidavits of compliance.

■ In June 1993, in an effort to comply with ¶ 6 of the Decree, defendant submitted compliance affidavits to plaintiff sworn to by Sonya Thompsen, New Line's Vice President of Business Affairs Administration, and Peter Fifield, Vice President of New Line Home Video, Inc.. At the hearing, Thompsen admitted that she had no personal knowledge of, and had made no effort to determine the truth of, certain facts alleged in her compliance affidavit. Similarly, Fifield admitted having no personal knowledge of the facts alleged in his affidavit but rather that he had relied on Jarboe's assurance that the facts set forth in the affidavit were true. 155 F.R.D. at 446–447. While this court cannot condone such actions—indeed, contempt sanctions have already been assessed with regard to these submissions, and their propriety affirmed—the court is not convinced that these affidavits were drafted and prepared in order to subvert the Decree intentionally. Although defendant clearly has

**756**

been far less than diligent and far from responsible in its attempts to comply with the Decree in this regard, it is not apparent to the court that these statements were made with the intent to violate the dictates of the Decree. *Cf. Pearlman, supra,* at *3 (holding reliance on attorney's advice with belated attempts to adhere to court's order militates against finding of willfulness); *U.S. v. Vulpis,* 807 F.Supp. 284, 288 (S.D.N.Y. 1991) (holding knowing direction of individuals to lie to undermine court's orders, with other similar conduct, constituted willful contempt), *aff'd sub nom. U.S. v. Paccione,* 964 F.2d 1269 (2d Cir.1992); *Drywall Tapers Local 1974 v. Local 530,* 81 C. 0337, 1986 WL 14711 (December 16, 1986, E.D.N.Y.) (holding attorney in willful contempt for making knowing misrepresentations to court and providing advice to client that violated clear language and purpose of court's order), *vacated on different grounds,* 889 F.2d 389 (2d Cir.1989), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990). As with other incidents of defendant's noncompliance, it was not willful action on the part of defendant that appears to have brought about the contempt. Rather, it was defendant's failure to establish a careful plan that would be carried out by responsible actors that resulted in the offensive consequences.

## CONCLUSION

For the reasons set forth above, plaintiff has failed to show by clear and convincing evidence that defendant's contemptuous conduct was willful and thus, under the law of the Second Circuit, attorney's fees for prosecuting defendant New Line for contempt of court are unwarranted and plaintiff's renewed request for such fees must be denied.

### *ORDER*

For the reasons set forth in the accompanying Opinion filed simultaneously herewith, plaintiffs' motion for attorney's fees is DENIED.

SO ORDERED.